UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

JAMES MCFADZEAN,

    Plaintiff,

v.

                                                  CASE NO.:

AMSCOT FINANCIAL, INC.,

    Defendant.

_____/

## COMPLAINT

1. Unwanted "Robocalls" are the #1 consumer complaint in America today. In March of 2021, Americans were bombarded with 4.9 billion Robocalls. That is an average of 159.4 million robocalls per day.[1]

2. The people complaining about harassing robocalls is increasing at an alarming rate.

3. Upon information and belief, Amscot Financial, Inc ("Amscot") robocalled the Plaintiff at least 2,000 times.

4. Upon information and belief, Amscot has a corporate policy to call people thousands of times.

5. "Senator Hollings, the TCPA's sponsor, described these calls as 'the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want

---

[1] https://robocallindex.com

to rip the telephone out of the wall.' 137 Cong. Rec. 30, 821 (1991).  Senator Hollings presumably intended to give telephone subscribers another option: telling the autodialers to simply stop calling." *Osorio v. State Farm Bank*, F.S.B., 746 F. 3d 1242, 1256 (11th Cir. 2014).  Despite the penalties put in place over 26 years ago, robocall abuse continues to skyrocket.

6. Plaintiff, James McFadzean, alleges Defendant, Amscot, robocalled him at least 2,000 times in stark violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA"), and the Florida Consumer Collection Practices Act, Fla. Stat. § 559.55 *et seq.* ("FCCPA") and Invasion of Privacy – Intrusion Upon Seclusion.

7. Robocalls are very inexpensive to make.  As was noted in a Senate hearing on the subject: "With such a cheap and scalable business model, bad actors can blast literally tens of millions of illegal robocalls over the course of a single day at less than 1 cent per minute."  *Stopping Fraudulent Robocall Scams: Can More Be Done?: Hearing Before the Subcomm. on Consumer Prot., Prod. Safety, and Ins. of the S. Comm. on Commerce, Sci., and Transp.*, 113 Cong. 113-117 (2013) (statement of Lois Greisman, Assoc. Director, Division of Marketing Practices, Bureau of Consumer Protection, Federal Trade Commission).

8. The TCPA was enacted to prevent companies like Amscot from invading American citizens' privacy and prevent illegal robocalls.

9. Congress enacted the TCPA to prevent real harm. Congress found that "automated or pre-recorded calls are a nuisance and an invasion of privacy, regardless of the type of call" and decided that "banning" such calls made without consent was "the only effective means of protecting telephone consumers from this nuisance and privacy invasion." Pub. L. No. 102-243, §§ 2(10-13) (Dec. 20, 1991), codified at 47 U.S.C. § 227; see also *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012) ("The Act bans certain practices invasive of privacy").

10. According to findings by the FCC—the agency Congress vested with authority to issue regulations implementing the TCPA—such calls are prohibited because, as Congress found, automated or pre-recorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.

11. This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of law are clear, as is the remedy. *Krakauer v. Dish Network, L.L.C.* No. 18-1518, 2019 WL 2292196 at *2 (4th Cir. May 30, 2019).

## JURISDICTION AND VENUE

12. Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. §1331.

13. Violations described in the Complaint occurred while Plaintiff was in Fort Lauderdale, Florida.

## FACTUAL ALLEGATIONS

14. Plaintiff is a natural person and citizen of the State of Florida, residing in Fort Lauderdale, Florida.

15. Plaintiff is a "consumer" as defined in Florida Statute § 559.55(8).

16. Plaintiff is the "called party." *See Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014); *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242 (11th Cir. 2014).

17. Defendant is a Florida Profit Corporation with its principal place of business in Tampa, Florida, and conducts business in the State of Florida.

18. Defendant is a "creditor" as defined by Florida Statute § 559.55(5).

19. The debt that is the subject matter of this complaint is a "consumer debt" as defined by Florida Statute § 559.55(6).

20. Plaintiff is the regular user and carrier of the Am cellular telephone number at issue, (305) 890-5326.

21. Plaintiff was the "called party" during each phone call subject to this lawsuit.

22. Defendant intentionally harassed and abused Plaintiff on numerous occasions by calling multiple times a day, and on back to back days, with such frequency as can reasonably be expected to harass.

23. "Express consent" is narrowly construed by the Courts.

24. It is the Defendant's burden to prove they had "express consent" per the TCPA to call the Plaintiff on his cell phone using an Automatic Telephone Dialing System ("ATDS").

25. It is the Defendant's burden to prove they had "express consent" per the TCPA to call the Plaintiff on his cell phone using an ATDS for each account they were calling on.

26. Defendant was put on notice Plaintiff did not want the Defendant contacting him.

27. In or about 2013, Plaintiff began receiving calls from the Defendant in an attempt to collect a debt.

28. Defendant placed calls to the Plaintiff on a regular basis.

29. In or about 2013, immediately after the calls began, Plaintiff asked the Defendant to stop calling and stated to the Defendant, "Please stop calling me. I'm tired of this. I've asked you guys to stop multiple times".

30. The Defendant continued to call the Plaintiff using voicemail messages on a regular basis.

31. Plaintiff expressly revoked any express consent Defendant may have mistakenly believed it had for placement of telephone calls to Plaintiff's aforementioned cellular telephone number.

32. Defendant attempted to collect a debt from the Plaintiff by this campaign of telephone calls.

33. Defendant attempted to collect a debt from the Plaintiff despite actual knowledge Plaintiff did not owe the alleged debt.

34. Defendant made at least one call to (305) 890-5326.

35. Defendant made at least three hundred (300) calls to (305) 890-5326.

36. Defendant made at least five hundred (500) calls to (305) 890-5326.

37. Defendant made at least one thousand (1,000) calls to (305) 890-5326.

38. Defendant made at least one thousand and five hundred (1,500) calls to (305) 890-5326.

39. Defendant made at least two thousand (2,000) calls to (305) 890-5326.

40. Each call the Defendant made to the Plaintiff's cell phone was done so without the "express permission" of the Plaintiff.

41. Upon information and belief, Defendant has called other people's cell phones without their express consent using an ATDS.

42. All of the calls at issue were placed by the Defendant using an "ATDS" as specified by the TCPA, 47 U.S.C. § 227(b)(1)(A).

43. Plaintiff repeatedly requested the Defendant to stop calling his cell phone, however, the Defendant continued to make calls.

44. Plaintiff's conversations with the Defendant putting them on notice that he did not want more phone calls were ignored.

45. Defendant has recorded at least one conversation with the Plaintiff.

46. Upon information and belief, Defendant has made approximately two thousand (2,000) calls to Plaintiff's aforementioned cellular telephone number since in or about 2013, which will be established exactly once Defendant turns over their dialer records.

47. Despite actual knowledge of their wrongdoing, the Defendant continued the campaign of abusive calls.

48. Defendant has been sued in federal court where the allegations include: calling an individual after the individual asked for the calls to stop.

49. By effectuating these unlawful phone calls, Defendants have caused Plaintiff the very harm that Congress sought to prevent—namely, a "nuisance and invasion of privacy."

50. Defendant's aggravating and annoying phone calls trespassed upon and interfered with Plaintiff's rights and interests in his cellular telephone and cellular telephone line, by intruding upon Plaintiff's seclusion.

51. Defendant's phone calls harmed Plaintiff by wasting his time.

52. Moreover, "wireless customers [like Plaintiff] are charged for incoming calls whether they pay in advance or after the minutes are used." In re: *Rules Implementing the TCPA of 1991*, 23 FCC Rcd 559, 562 (2007). Defendant's phone calls harmed Plaintiff by depleting the battery life on his cellular telephone, and by using minutes allocated to Plaintiff by his cellular telephone service provider.

53. Upon information and belief, Defendant's corporate policy and procedures are structured as to continue to call individuals like the Plaintiff, despite these individuals revoking any consent the Defendant may have mistakenly believed it had.

54. Upon information and belief, Defendant's corporate policy and procedures provided no means for the Plaintiff to have his aforementioned cellular number removed from the call list.

55. Upon information and belief, Defendant has a corporate policy of using an ATDS to collect debts from individuals such as Plaintiff for its financial benefit.

56. Plaintiff expressly revoked any consent Defendant may have mistakenly believed it had for placement of telephone calls to Plaintiff's aforementioned cellular telephone immediately upon Defendant's placement of the calls. Making money while breaking the law is considered an incentive to continue violating the TCPA and other state and federal statutes.

57. None of Defendant's telephone calls placed to Plaintiff were for "emergency purposes" as specified in 47 U.S.C. §227(b)(1)(A).

58. Defendant violated the TCPA and FCCPA with respect to the Plaintiff.

59. Defendant willfully or knowingly violated the TCPA with respect to the Plaintiff.

## COUNT I
**(Violation of the TCPA)**

60. Plaintiff incorporates Paragraphs one (1) through fifty-nine (59).

61. Defendant willfully violated the TCPA with respect to the Plaintiff each time they called the Plaintiff after he revoked his consent to be called by them using an ATDS.

62. Defendant knowingly violated the TCPA with respect to the Plaintiff, especially for each of the calls made to Plaintiff's cellular telephone after Plaintiff revoked his consent to be called by them using an ATDS

63. Defendant, Amscot, repeatedly placed non-emergency telephone calls to the wireless telephone number of Plaintiff without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

64. As a result of Defendant's illegal conduct, Plaintiff suffered actual damages and, under § 227(b)(3)(B), is entitled to, inter alia, a minimum of $500.00 in damages for each such violation of the TCPA.

65. Plaintiff is also entitled to, and does, seek injunctive relief prohibiting Defendant, Amscot, from violating the TCPA in the future.

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant for statutory damages, punitive damages, actual damages and any other such relief the court may deem just and proper.

## COUNT II
**(Violation of the FCCPA)**

66. Plaintiff incorporates Paragraphs one (1) through fifty-nine (59).

67. At all times relevant to this action Defendant is subject to and must abide by the law of Florida, including Florida Statute § 559.72.

68. Defendant has violated Florida Statute § 559.72(7) by willfully communicating with the debtor or any member of his family with such frequency as can reasonably be expected to harass the debtor or his family.

69. Defendant has violated Florida Statute § 559.72(7) by willfully engaging in other conduct which can reasonably be expected to abuse or harass the debtor or any member of his family.

70. Defendant has violated Florida Statute § 559.72(9) by attempting to enforce a debt when Defendant knows that the debt is not legitimate or assert the existence of some legal right when Defendant knows that right does not exist.

71. Defendant's actions have directly and proximately resulted in Plaintiff's prior and continuous sustaining of damages as described by Florida Statute §559.77.

## COUNT III
**(Invasion of Privacy – Intrusion Upon Seclusion)**

72. Plaintiff incorporates Paragraphs one (1) through fifty-nine (59).

73. Defendant through its collection conduct, has repeatedly and intentionally invaded Plaintiff's privacy.

74. All of the calls made to Plaintiff's cell phone by Defendant and its agents were made in violation of the TCPA, and were unreasonable and highly offensive invasions of Plaintiff's right to privacy.

75. Defendant's persistent calls to his cellular telephone eliminated Plaintiff's right to be left alone.

76. Defendant's collection calls disrupted Plaintiff's privacy, disrupted Plaintiff's sleep, disrupted Plaintiff during mealtimes, and continually frustrated and annoyed Plaintiff.

77. These persistent collection calls eliminated the peace and solitude that the Plaintiff would have otherwise had in Plaintiff's home and anywhere else Plaintiff went with his cellular phone.

78. By calling his cellular telephone, Plaintiff had no escape from these collection calls either in his home or when he left the home.

79. By persistently calling Plaintiff's cellular telephone without prior express consent, Defendant invaded Plaintiff's right to privacy, as legally protected by the TCPA, and caused Plaintiff to suffer concrete and particularized harm.

80. Defendant's harassing collection conduct and tactic of repeatedly dialing Plaintiff on his cellular telephone after requests to stop is highly offensive to a reasonable person.

81. Defendant intentionally intruded upon Plaintiff's solitude and seclusion.

82. As a result of Defendant's action or inaction, Plaintiff is entitled to recover damages, including but not limited to invasion of privacy, worry, fear, distress, frustration, all to his damages in an amount to be determined by the jury.

83. Plaintiff is entitled to recover punitive damages in an amount to be determined by the jury.

**WHEREFORE,** Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant for statutory damages, punitive damages, actual damages, costs, interest, attorney fees, enjoinder of future illegal conduct, and any other such relief the court may deem just and proper.

Respectfully submitted,

/s/ *William Peerce Howard, Esq.*
William Peerce Howard, Esquire
Florida Bar No. 0103330
THE CONSUMER PROTECTION FIRM
401 East Jackson Street, Suite 2340
Tampa, FL 33602
Telephone: (813) 500-1500
Facsimile: (813) 435-2369
Billy@TheConsumerProtectionFirm.com
Bonnie@TheConsumerProtectionFirm.com
***Attorneys for Plaintiff***